**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200227-U

Order filed March 8, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| DONALD L. ROPP JR., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Petitioner-Appellee, | ) | Henry County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-20-0227 |
| RAYMOND L. ROPP, Trustee of the Donald | ) | Circuit No. 17-CH-27 |
| Lee Ropp Sr. Living Trust, Under the | ) | |
| Trust Agreement Dated December 12, 2007, | ) | |
| | ) | |
| Respondent-Appellant | ) | The Honorable |
| | ) | Mark A. VandeWiele, |
| (Sena M. Ropp, Intervenor-Appellee). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| *In re Estate* OF REBA F. ROPP, | ) | |
| | ) | |
| Deceased | ) | |
| | ) | Appeal No. 3-20-0232 |
| (Donald E. Mortenson Jr., Petitioner-Appellee; | ) | Circuit No. 17-P-117 |
| Raymond L. Ropp, Respondent-Appellant; | ) | |
| Donald L. Ropp Jr. and Sena M. Ropp, | ) | |
| Respondents-Appellees). | ) | |

_____

| | | |
|---|---|---|
| *In re* DONALD LEE ROPP SR. LIVING | ) | |
| TRUST, Under the Agreement Dated | ) | |
| May 19, 2016 | ) | Appeal No. 3-20-0228 |
| | ) | Circuit No. 19-CH-57 |
| (Larry L. Ropp, Petitioner-Appellee; Donald L. | ) | |
| Ropp Jr. and Sena Ropp, Respondents- | ) | |
| Appellants). | ) | |

_In re_ ESTATE OF DONALD LEE ROPP SR.,  )
                                     )
        Deceased             )
                                   )      Appeal No. 3-20-0229
(Raymond L. Ropp, Appellant; Donald L. Ropp)   Circuit No. 19-P-114
Jr., Sena M. Ropp, and Estate of Reba F. Ropp, )
Appellees).                    )

_In re_ ESTATE OF LARRY L. ROPP,     )
                                   )
        Deceased.          )
                                   )      Appeal Nos. 3-20-0230, 3-20-0231
(Raymond L. Ropp, Appellant; Donald L. Ropp)   Circuit Nos. 20-P-7, 20-P-8
Jr., Sena M. Ropp, and Estate of Reba F. Ropp, )
Appellees).                    )

JUSTICE HETTEL* delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

**ORDER**

¶ 1     _Held_:  (1) Trial court had jurisdiction to order removal of trustee; (2) trial court did not abuse its discretion in removing trustee.

¶ 2     This appeal is the result of six underlying cases concerning the Ropp family. The matters were consolidated in the circuit court. As a result of orders entered below, respondent Raymond Ropp filed 16 appeals with this court that were subsequently consolidated into three sets of appeals. This set of six appeals concerns the lower court's removal of Raymond as trustee of the Donald Lee Ropp Sr. Living Trust. We affirm the trial court's removal of Raymond as trustee.

¶ 3                                BACKGROUND

¶ 4     Donald Ropp Sr. (Don Sr.) is the settlor of the trust at issue in this appeal. Don Sr. also had a pour-over will with the trust as the sole beneficiary. Don Sr. and Larry L. Ropp served as cotrustees until Don Sr.'s death in July 2016. Don Sr. was survived by his wife Reba F. Ropp and

---

* This case was administratively reassigned to Justice Hettel on December 19, 2022.

his four children: Donald Ropp Jr. (Don Jr.), Sena Ropp, Larry L. Ropp, and Raymond Ropp. Reba and the four children were all named beneficiaries in the trust. Upon Don Sr.'s death, Larry became the sole trustee. Reba died on August 26, 2016. Shortly thereafter, Reba's son, Donald Mortenson Jr., opened an estate for Reba. Reba's estate was assigned Case No. 2017-P-117.

¶ 5    In March 2017, in Case No. 2017-CH-27, Don Jr. filed a motion for temporary restraining order (TRO) and preliminary injunction, requesting an accounting of trust property and an order prohibiting Larry from transferring trust property that, pursuant to the trust's language, Don Jr. had the right to purchase. Larry filed a motion to dismiss Don Jr.'s motion. The trial court granted a TRO restraining Larry from taking any action with respect to the trust assets that Don Jr. was granted an option to purchase. Thereafter, the court extended the TRO, holding that it would be in effect until 45 days after appointment of a special cotrustee.

¶ 6    In May 2017, Larry sent letters to Don Jr., Sena, and Reba's estate notifying them that he determined they were disinherited from the trust, leaving only himself and Raymond as beneficiaries. Almost a year later, Larry filed a motion to dissolve the TRO asserting, among other things, that Patricia Ruhl had been appointed as special cotrustee. The court entered an order finding that the special cotrustee was appointed, appeared to meet the qualifications of the trust, and that the TRO would dissolve on a date certain to allow the presentment of the issue to the special cotrustee. Don Jr. filed a motion to reconsider, and Reba's estate filed a petition to intervene. The trial court denied the motion and petition.

¶ 7    In July 2019, Ruhl issued a document titled "Findings, Conclusions and Award", which confirmed the disinheritance of Don Jr., Sena and Reba's estate. Larry, as trustee, filed a petition with the circuit court, in Case No. 2019-CH-27, requesting confirmation of Ruhl's findings of disinheritance. In September 2019, Don Jr. filed a response, arguing the court should deny Larry's

request, deem the special cotrustee provision unworkable, retain jurisdiction to enforce and interpret the trust terms, and any other relief deemed appropriate. Reba's estate and Sena also filed a response to the petition for confirmation requesting relief similar to that requested by Don Jr., and also requested that the pour-over will of Don Sr. be admitted to probate with Timothy Slavin, a retired Rock Island circuit court judge, appointed to administer the estate, along with other relief deemed equitable under the circumstances.

¶ 8        In September 2019, in Case No. 2019-P-114, Don Jr. filed a petition to probate the pour-over will of Don Sr. and letters testamentary. Don Jr. requested that the court appoint Slavin as administrator of Don Sr.'s estate. Larry filed a motion to dismiss the petition to probate arguing, in part, that he as trustee should be executor of Don Sr.'s probate estate. In January 2020, Larry became incapacitated, and Raymond opened a guardianship estate in Case No. 2020-P-7. Larry died on January 28, 2020. Pursuant to the terms of Don Sr.'s trust, Raymond became the successor trustee. Raymond opened an estate for Larry in Case No. 2020-P-8.

¶ 9        In February 2020, Judge Mark A. VandeWiele was assigned to the six pending cases concerning the Ropp family: (1) No. 2017-P-117, Reba's estate; (2) No. 2017-CH-27, the TRO suit; (3) No. 2019-CH-57, seeking confirmation of the special cotrustee's findings of disinheritance; (4) No. 2019-P-114, the estate of Don Sr.; (5) No. 2020-P-7, Larry's guardianship; and (6) No. 2020-P-8, Larry's estate.

¶ 10        On March 23, 2020, the court held a status hearing on all six cases. The next day, the court entered an order requiring Raymond to produce a trust accounting "within 60 days." On April 13, 2020, Don Jr., Sena, and Reba's estate filed a combined motion for trust accounting. Raymond filed a motion to strike the motion.

4

¶ 11          Following a videoconference on May 20, 2020, the court entered a written order on May 26, 2020. In that order, the trial court explained: "This is a family dispute concerning the administration and distribution of Donald Lee Ropp, Sr.'s assets. Poor communication, distrust, and a failure to follow trust and private law have led to entrenched positions and unnecessarily clogged this court's docket." The court opined: "The primary problem is Larry and now Raymond refuse to provide any sort of trust accounting which has a ripple effect throughout the various cases." The trial court ordered: (1) that Slavin be appointed administrator of Don Sr.'s estate, (2) suspension of Raymond's powers as trustee, (3) Raymond to complete a trust accounting by June 15, 2020, and (4) that Raymond show cause why he should not be removed as trustee at a hearing scheduled for June 17, 2020. The court also ruled, over Raymond's objection, that it had subject matter jurisdiction over the direction of the trust; that Ruhl lacked "legal authority to bind Don, Jr., Sena and Reba's estate to any 'legal ruling' issued" by it; and that the "Findings, Conclusions and Award" issued by Ruhl was "unenforceable as a matter of law." Raymond immediately filed a notice of appeal, seeking reversal of the trial court's (1) appointment of Slavin as administrator of Don Sr.'s estate, and (2) denial of the "Petition for Confirmation of Findings, Conclusions and Award of Special Co-Trustee in Case No. 2019 CH 57."

¶ 12          On May 28, 2020, the trial court directed the parties to file an inventory of assets they believed to be in Don Sr.'s trust. The parties provided three documents to the court: (1) a draft of the date-of-death inventory begun by Larry but never filed; (2) a date-of-death inventory filed by Don Jr., and (3) the current value of the trust, according to Raymond. According to Larry, the trust had a value of $1,262,076.14 at the time of Don Sr.'s death, including $251,520.10 in cash, and outstanding loans owed by Larry in the amount of $58,800, and Don Jr. in the amount of $9,067.02. According to Don Jr., the total value of the trust on Don Sr.'s death was $1,403,866.88, including

5

$280,634,47 in cash, and outstanding loans held by Larry in the amount of $111,300.00, Raymond in the amount of $98,138,41, and Sena in the amount of $10,139. According to Raymond, the trust, as of June 2020, had assets totaling $639,488.62, including cash of $12,809.62, and outstanding loans owed by Sena and Mortenson in the amount of $10,644, and Larry in the amount of $58,800.

¶ 13    The rule to show cause hearing scheduled for June 17, 2020, was continued to June 22, 2020, after the court discovered that Raymond did not share relevant exhibits with opposing counsel. The June 22, 2020, hearing lasted more than three hours. At the hearing, Raymond testified he has been acting as trustee of Don Sr's trust since January 29, 2020, when Larry died. On January 28, 2020, while Larry was in the hospital, Raymond and his children went to Larry's house and removed approximately 20 crates of documents, many of which contained trust-related documents.

¶ 14    Raymond does not consider Don Jr., Sena, or Reba's estate to be beneficiaries of Don Sr.'s trust. He considers himself the only beneficiary and believes he is "the only one" entitled to trust assets. Raymond discussed with Ruhl his belief that Don Jr. and Sena were disinherited and that everything in the trust should go to him.  Raymond testified he has attempted to follow the terms of the trust, as well as his father's wishes and intentions, since he became trustee.

¶ 15    Raymond denied using any trust assets for his personal use, wasting trust assets or receiving any distributions from the trust. Raymond testified that he "[a]bsolutely" has a spreadsheet showing the amount of trust assets he has spent since he became trustee but never provided that document to the court. He estimated he has spent approximately $7,000 in trust assets since he took over as trustee, including $3,000 in legal fees. According to Raymond, the trust owes outstanding legal fees of approximately $40,000. Raymond has not spent any of his own money on legal fees.

6

¶ 16    Raymond has a high school education and has received on-the-job training as an operating engineer. He has no special training in accounting. Raymond testified he borrowed money from Don Sr. and based on his "last record," owed him "around $5,000." Raymond tried to pay Don Sr. back, but Don Sr. refused to accept his payment. Raymond denied owing Don Sr. or the trust approximately $50,000 for the purchase of a home. Raymond admitted he obtained money from Don Sr. to purchase a home but said that money was supposed to come out of his inheritance; he never agreed to pay it back. Raymond also denied owing Don Sr. or the trust $10,000 for the purchase of his son's house.

¶ 17    On June 24, 2020, the trial court entered an order removing Raymond as trustee, finding that he "materially breached his duty to account." The court stated that while Raymond has possessed trust financial records since January 28, 2020, he "has failed to provide an accounting as required by statute, the terms of the trust, and the order of this court." The court also noted that according to Raymond's inventory of the trust as of June 19, 2020, roughly $250,000 in cash is unaccounted for, $40,000 in legal fees are outstanding and "Raymond's personal debt to Don Sr. is not listed."

¶ 18    The trial court further determined that Raymond "is incapable of being impartial as required by 760 ILCS 3/803 causing him to materially fail in his fiduciary duties." The court stated:

> "Raymond claims personal ownership of all assets and demonstrates he will spend trust assets to further his personal financial interests while keeping his siblings and this court in the dark. Raymond's testimony established he lacks the skills, training, and independence to effectively administer and manage this Trust. This Trust needs a strong leader, but Raymond lacks the ability to lead because of

7

his own personal financial stake in the outcome interferes with his fiduciary judgment."

The court concluded: "If Raymond remains as Trustee, these cases will not end until all the Ropp siblings are deceased and trust and estate assets exhausted. Raymond's removal as trustee will best serve trust purposes and the interests of beneficiaries." The court named Blackhawk State Bank as successor trustee, or, alternatively, Slavin if Blackhawk declined the appointment. The court retained jurisdiction to appoint a successor trustee if both Blackhawk and Slavin declined.

¶ 19    On June 30, 2020, Blackhawk filed a declination to act as successor trustee of Don Sr.'s trust. On July 20, 2020, the trial court entered an order clarifying that Raymond may pursue appeals only in his individual name, not as trustee of Don Sr.'s trust. Raymond appealed the trial court's orders of May 26, 2020, June 24, 2020, and July 20, 2020. This appeal involves only the June 24, 2020, order.[1]

¶ 20                                II. ANALYSIS

¶ 21     On appeal, Raymond argues: (1) the lower court lacked subject-matter jurisdiction to direct the administration of the trust and remove him as trustee; (2) alternatively, the trial court was divested of jurisdiction to remove him as trustee when he appealed the trial court's May 26, 2020, order; and (3) even if the court did acquire jurisdiction, the trial court abused its discretion in removing him as trustee.

¶ 22                        A. Subject-Matter Jurisdiction

_____

[1] The parties filed several motions on appeal. Raymond filed (1) a motion to partially stay the trial court's orders of May 26, 2020, and June 24, 2020, and (2) a motion for writ of *mandamus*. We denied both motions. Sena, Don Jr,. and Reba's estate filed a motion to dismiss the appeal for lack of jurisdiction, which we denied. Finally, Raymond filed a motion to strike appellees' brief, which was taken with the case, and we now deny.

8

¶ 23    "[S]ubject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 13 (citing *J & J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23). This state's constitution vests circuit courts with original jurisdiction over all "justiciable matters" except when the state supreme court possesses " 'original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office.' " *Id.* (quoting Ill. Const. 1970, art. VI, § 9). Thus, as long as the matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of the Illinois Supreme Court, the circuit court has subject-matter jurisdiction to consider it. *Id.* (citing *McCormick v. Robertson,* 2015 IL 118230, ¶ 20). "Whether a circuit court has subject matter jurisdiction to entertain a claim presents a question of law which we review *de novo.*" *McCormick*, 2015 IL 118230, ¶ 18.

¶ 24    The Illinois Trust Code (Code) provides: "The court may adjudicate any matter arising in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." 760 ILCS 3/201(a) (West 2020). Further, the Code provides: "By accepting the trusteeship of a trust having its principal place of administration in this State or by moving the principal place of administration to this State, the trustee is subject to the jurisdiction of the courts of this State regarding any matter involving the trust." *Id*. § 202(a). Finally, the Code provides: "A settlor, a co-trustee, or a qualified beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative." *Id*. § 706(a).

¶ 25    When a court acquires jurisdiction of a trust for one purpose, it acquires jurisdiction for all purposes, including the administration of the trust and an accounting of the acts of the trustee. *Huston v. Weed*, 242 Ill. App. 495, 500 (1926) (citing *Northwestern University v. Wesley*

*Hospital,* 290 Ill. 205 (1919); *Anderson v. Anderson,* 293 Ill. 565 (1920)). If the court acquires jurisdiction of a trust, it retains jurisdiction until the expiration of the trust. *Id.*

¶ 26 Here, the trial court acquired jurisdiction over the trust in 2017, when Don Jr. filed his petition for TRO against Larry, as trustee. See 760 ILCS 3/201(a) (West 2020). Once the court acquired jurisdiction for that purpose, the court acquired jurisdiction of the trust for all purposes and retains jurisdiction until the trust expires. See *Huston v. Weed*, 242 Ill. App. at 500. By accepting the position of trustee of Don Sr.'s trust, Raymond subjected himself to the jurisdiction of the trial court for "any matter involving the trust." See 760 ILCS 3/202(a) (West 2020). The removal of Raymond as trustee is a "matter involving the trust." Thus, the trial court had subject matter-jurisdiction to remove Raymond as trustee of Don Sr.'s trust.

¶ 27 Nevertheless, Raymond argues the trial court lacked jurisdiction to remove him as trustee because none of the parties filed a pleading requesting his removal. We disagree. Section 706(a) of the Code allows a court to remove a trustee "on its own initiative." *Id*. § 706(a). Thus, it was within the court's power and authority to, *sua sponte*, remove Raymond as trustee. See *id*. Raymond's contention that the trial court lacked subject matter jurisdiction to remove him as trustee is without merit.

¶ 28 B. Trial court's Jurisdiction Following Notice of Appeal

¶ 29 Raymond argues that the circuit court lacked jurisdiction to remove him as trustee on June 24, 2020, because the court was divested of jurisdiction to make any substantive rulings after May 26, 2020, when he filed his notice of appeal.

¶ 30 The filing of a notice of appeal transfers jurisdiction from the trial court to the appellate court *instanter* and ordinarily divests the trial court of jurisdiction to enter further orders of substance. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 162 (1998); *Landmarks*

10

*Illinois v. Rock Island County Board*, 2020 IL App (3d) 190159, ¶ 37. However, "the trial court retains jurisdiction on matters collateral or supplemental to the judgment." *In re N.L.*, 2014 IL App (3d) 140172, ¶ 23. "Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from." *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066, 1073 (1987).

¶ 31      "[O]rders entered after the filing of the notice of appeal are valid if the substantive issues on appeal are not altered so as to present a new case to the reviewing court." *R.W. Dunteman Co.*, 181 Ill. 2d at 162; see also *In re Estate of Goodlett*, 225 Ill. App. 3d 581, 587 (1992) ("Orders entered by a trial court after the filing of a notice of appeal are valid if substantive issues on appeal are not affected and if the nature of the appeal is not altered."); *Chavin v. General Employment Enterprises, Inc.*, 222 Ill. App. 3d 398, 405 (1991) (where a trial court's order entered after a notice of appeal is filed "does not change the substance of the earlier order so as to present a new case to the appellate court, the subsequent order is a valid exercise of the trial court's jurisdiction").

¶ 32      Here, Raymond's notice of appeal filed on May 26, 2020, sought reversal of the trial court's order entered on that date, which (1) appointed Slavin administrator of Don Sr.'s estate and (2) denied Raymond's petition to enforce the findings of the special cotrustee. The trial court's order entered on June 24, 2020, removing Raymond as trustee is unrelated to and independent of the trial court's rulings on May 26, 2020. Although the trial court was divested of jurisdiction to change or modify its May 26, 2020, order once Raymond filed his notice of appeal, the trial court still had jurisdiction to hear and decide other collateral or supplemental issues, including the removal of Raymond as trustee of Don Sr.'s trust. See *N.L.*, 2014 IL App (3d) 140172, ¶ 23. Because the trial court's order removing Raymond as trustee did not affect or alter any of the issues raised in Raymond's May 26, 2020, notice of appeal, the trial court had jurisdiction to enter its

June 24, 2020, order removing Raymond as trustee. See *R.W. Dunteman Co.*, 181 Ill. 2d at 162; *Estate of Goodlett*, 225 Ill. App. 3d at 587; *Chavin*, 222 Ill. App. 3d at 405.

¶ 33                               C. Removal of Raymond as Trustee

¶ 34        Finally, Raymond argues that the trial court erred in removing him as trustee of Don Sr.'s trust. He contends the court improperly held him responsible for the actions and inactions of Larry, the prior trustee.

¶ 35        A trustee owes a fiduciary duty to the trust's beneficiaries and is obligated to carry out the trust according to its terms and must exercise the highest degree of good faith in the administration of the trust. See *In re Estate of Muppavarapu,* 359 Ill. App. 3d 925, 929 (2005); *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 303 (1993). Good faith in the administration of a trust means the trustee must act honestly and with undivided loyalty to the trust and its beneficiaries. *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 715 (1987). The trustee must consider the beneficiaries' interests and cannot perform any act inconsistent with those interests. *Id.*

¶ 36        The Code sets forth duties owed by trustees. See 760 ILCS 3/801 *et seq*. (West 2020). Those duties include: (1) a duty to "administer the trust in good faith, in accordance with its purposes and the terms of the trust, and in accordance with this Code" (*id*. § 801); (2) a duty of loyalty (*id*. § 802); (3) impartiality, which requires the trustee to "act impartially in investing, managing, and distributing the trust property giving due regard to the beneficiaries respective interests" and "treat the beneficiaries equitably in light of the purposes and terms of the trust" (*id*. § 803); (4) prudent administration, which requires the trustee to "administer the trust as a prudent person would" and "exercise reasonable care, skill and caution" (*id*. § 804); (5) incurring "only costs that are reasonable in relations to the trust property and purposes of the trust" (*id*. § 805); (6) control and protection of trust property (*id*. § 809); (7) recordkeeping and identification of trust

12

property, which requires the trustee to "keep adequate records of the administration of the trust" and "keep trust property separate from the trustee's own property" (*id.* § 810(a)-(b)); (8) enforcement and defense of claims, requiring the trustee to "take reasonable steps to enforce claims of the trust and to defend claims against the trust" (*id.* § 811); and (9) a duty to inform and account to trust beneficiaries (*id.* §§ 813.1, 813.2).

¶ 37        "A successor trustee is under no duty to inquire into the acts or doings of a predecessor trustee, and is not liable for any act or failure to act of a predecessor trustee." *Id.* § 812(b); see also *Dick*, 242 Ill. App. 3d at 304 (successor trustee not liable for breach of trust committed by former trustee). A successor trustee "does not by becoming trustee assume liabilities incurred by his predecessors." *Dick*, 242 Ill. App. 3d at 304. A successor trustee "is liable only if he himself is guilty of a violation of duty to the beneficiaries." *Id.* "A successor trustee is, however, liable if he as well as the predecessor is guilty of a violation of duty to the beneficiaries." *Id.*

¶ 38        A court may remove a trustee when (1) "the trustee has committed a serious breach of trust;" or (2) "because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee serves the purposes of the trust and interests of the beneficiaries." 760 ILCS 3/706(b) (West 2020). "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." *Id.* § 1001(a). When a breach of trust has occurred, the court may compel the trustee to perform his duties, order the trustee to file an accounting, suspend the trustee, or remove the trustee. See *id.* §1001(b).

¶ 39        The trial court's removal of a trustee will not be disturbed on appeal absent an abuse of discretion. *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, 156 (1938); *In re Estate of Mercier*, 2011 IL App (4th) 110205, ¶ 14. "An abuse of discretion exists where no reasonable person would take the position adopted by the trial court [citation], or where the trial court acts

13

arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law." *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 476 (2001).

¶ 40       Here, the trial court removed Raymond as trustee of Don Sr.'s trust because Raymond (1) "materially breached his duty to account under 760 ILCS 3/813.1" and (2) "is incapable of being impartial as required by 760 ILCS 3/803 causing him to materially fail in his fiduciary duties." The trial court further determined that "Raymond's removal as trustee will best serve trust purposes and interests of beneficiaries." These are appropriate reasons for removal of a trustee under the Code. See 760 ILCS 3/706(b) (West 2020).

¶ 41       Additionally, the evidence supports the trial court's determinations that Raymond breached his duty to account. The trial court first ordered Raymond to complete an accounting in March 2020, giving him 60 days to do so. The court then extended the accounting deadline to June 15, 2020. Still, Raymond failed to provide the court with an accounting. At the rule to show cause hearing originally scheduled for June 17, 2022, and subsequently held on June 22, 2020, Raymond still did not provide an accounting. Not only did Raymond fail to provide a complete accounting, he failed to submit to the court relevant financial records he had in his possession. Raymond testified at the rule to show cause hearing that he "[a]bsolutely" had a spreadsheet listing all his expenditures from the trust account; however, he never provided that document to the court. Raymond's failure to timely complete an accounting when repeatedly ordered by court to do so and failure to provide the court with relevant financial documents supports the trial court's determination that Raymond violated his duty to account for trust property.

¶ 42       The evidence also supports the trial court's finding that Raymond violated his duty of impartiality, which required him to give due regard to the interests of beneficiaries. See *id.* § 803. Raymond's testimony at the rule to show cause hearing established that Raymond gave no regard

14

to the interests of trust beneficiaries Don Jr., Sena, and Reba's estate because he did not consider them to be beneficiaries of the trust even though they are named as beneficiaries in the trust. Raymond testified he believed he was the only beneficiary of the trust and was entitled to all trust assets. Raymond also failed to give due regard to the interests of the other beneficiaries by failing to include a loan to himself in the inventory of trust assets he provided to the court and by using a significant amount of trust assets, instead of his personal funds, to pay legal fees he incurred.

¶ 43   Nevertheless, Raymond claims that the trial court improperly held him responsible for Larry's inactions as trustee, which is expressly prohibited by the Code. See *id*. § 812(b). We disagree with this contention. While the trial court mentioned both Larry and Raymond when discussing that there had been no accounting of the trust in nearly four years, the court did not hold Raymond liable for Larry's failure to account.

¶ 44                                          CONCLUSION

¶ 45   The judgment of the circuit court of Henry County is affirmed.

¶ 46   Affirmed.

15